## John A. Allen *vs.* Wilson Wheeler.

A horsedealer, being insolvent, conveyed and delivered to one of his creditors, to whom he owed $112, two horses, a wagon and harness, and immediately received possession of them again to sell for said creditor, and they were attached in his hands as his own property; said creditor replevied them of the attaching officer, and delivered them again to the debtor, who made a succession of sales and exchanges with them, and afterwards accounted to the creditor for the sum of $225 received from sales of the horses, and paid over $125, deducting $100 for charges and expenses; and the creditor gave him the wagon and harness. On the trial of the replevin, the judge instructed the jury that the burden of proving fraud in the conveyance was on the defendant throughout, and that

the facts above stated, unless explained, were evidence of fraud; but refused to instruct them that, on these facts, in the absence of other evidence, the defendant was entitled to a verdict. *Held*, that the defendant had no ground of exception.

REPLEVIN of two horses, a wagon, harnesses and buffalo robes, attached by the defendant, as constable, on a writ against John Underwood.

At the trial in the court of common pleas, before *Mellen*, C. J., the defendant called no witnesses, but the following facts were testified to by Underwood and others, called by the plaintiff: Underwood, being a horsedealer, and having been for some years in debt, by reason of which he had kept no property in his own hands, in the spring of 1853 received of the plaintiff one hundred dollars to be employed in the purchase of a horse for him, and purchased one or two horses for the plaintiff, but the plaintiff did not like and refused to receive either of them. On the 5th of November 1853, Underwood being at the plaintiff's place of business in Woonsocket (R. I.), the plaintiff demanded repayment of the sum so advanced, and on the same day, in consideration of that sum, and of the further sum of twelve dollars advanced by the plaintiff, Underwood conveyed and delivered the property replevied and other chattels to the plaintiff, and all the property so delivered was on the same day returned by the plaintiff to the possession of Underwood, where it remained till it was attached by the defendant, on the 19th of said November. The plaintiff and Underwood, on said 5th of November, executed an agreement in writing, in which this property was described as the plaintiff's, and it was agreed that Underwood should take it and sell it for the benefit of the plaintiff, and, after deducting necessary expenses and charges incurred in keeping and selling it, and a reasonable compensation for his time, labor and skill, pay to the plaintiff, on demand, all sums that he might receive from such sales, and return any part of it remaining unsold, Underwood "hereby claiming no interest or property in the same, otherwise than the possession of the same for the purpose of selling the same as aforesaid for the benefit and advantage of the said Allen."

In January 1854, sixty dollars, sent by the plaintiff, were put

in the hands of the sureties on the replevin bond, as indemnity for signing the bond, and there remained until the trial. After the execution of the replevin bond, the property was returned to Underwood's possession, and he soon after sold both the horses, and made a succession of trades and exchanges with the proceeds, and in June 1854 made a settlement with the plaintiff, by which he accounted for the sum of two hundred and twenty five dollars received from the sale of the horses, and paid the plaintiff one hundred and twenty five dollars in full, accounting for the residue as consumed in expenses and charges ; and the plaintiff at the same time gave him the wagon, harnesses and buffalo robes, saying that Underwood had done pretty well by the property, and he thought himself lucky to get out of it as well as he did. The defendant, before he attached the property, asked Underwood whether it was his, and he replied that it was.

" The court charged the jury, without any request or exception from the counsel of either party, that the plaintiff, having proved the execution and delivery of a bill of sale or of parcels, absolute on its face, by Underwood to the plaintiff, and a delivery of the property named in said bill by said Underwood to him, in pursuance of said bill, if the defendant relies upon fraud to invalidate such contract, it is incumbent on the defendant to prove such fraud.

" The defendant's counsel requested the court to instruct the jury, that in the transaction, as stated by the plaintiff's witnesses, there were badges of fraud, or indications that at best the transaction was for security, and not an absolute sale ; and that it was their duty in either case to find for the defendant.

" The court instructed the jury that all the facts relied on by the defendant to invalidate the sale by Underwood to the plaintiff, unless satisfactorily explained, were evidence of fraud, and properly before them for their consideration; and if the transaction was in substance a mortgage by Underwood to the plaintiff, or a security to the plaintiff for money advanced by him to Underwood, and not an absolute conveyance, then, in either case, the sale between the plaintiff and Underwood was void as against an attaching creditor of Underwood ; and that the jury

11 *

should return a verdict for the defendant." The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*G. T. Davis & C. Allen,* for the defendant. In New Hampshire, Connecticut, Vermont, and many other states, all agreements that the vendor shall retain possession, made directly after the sale, either without changing the possession, or immediately after changing it, are regarded as conclusive evidence of fraud. *Kendall* v. *Fitts,* 2 Foster, 7, and cases cited. *Kirtland* v. *Snow,* 20 Conn. 28, 29, and cases cited. *Mills* v. *Warren,* 19 Verm. 609. *Hutchins* v. *Gilchrist,* 23 Verm. 82, and cases cited. The rule in this state is understood to be (substantially) that continued possession, and other badges of fraud, are presumptive evidence of fraud, which presumption must prevail unless explained or repelled by other evidence; in other words, that proving the existence of these badges of fraud makes out a *prima facie* case of fraud, which shifts the burden of proof. *Briggs* v. *Parkman,* 2 Met. 263. *Brooks* v. *Powers,* 15 Mass. 244. *Homes* v. *Crane,* 2 Pick. 610. *Oriental Bank* v. *Haskins,* 3 Met. 334, 338. This conveyance was of all Underwood's attachable property, made by him while in debt, for an inadequate consideration, in an unusual form, and had a tendency to defeat and hinder creditors. There being no evidence in the case to explain the badges of fraud which appeared on the plaintiff's own showing, the judge should have instructed the jury that it was their duty to find for the defendant. *Gunn* v. *Butler,* 18 Pick. 252. *Parkman* v. *Welch,* 19 .Pick. 234. *Robbins* v. *Parker,* 3 Met. 117. *Hartshorn* v. *Eames,* 31 Maine, 98. *Cadbury* v. *Nolen,* 5 Barr, 320. *Coburn* v. *Pickering,* 3 N. H. 415. *Trask* v. *Bowers,* 4 N. H. 309. The explanation should be such as might fairly lead those around, if they had any interest in the matter, to a reasonable belief that there had been a sale and change of property. *Clark* v. *Morse,* 10 N. H. 240. See also *French* v. *Hall,* 9 N. H. 145. Even in case of a slight explanation, the court may take the case from the jury, on the ground that the explanation is insufficient. *Lillywhite* v. *Devereux,* 15 M. & W. 285. The facts that Underwood was to retain the possession, and use and trade upon the property as his own,

keeping the same at his own expense, especially when connected with the circumstances of the final settlement, disclose a secret trust ; and therefore there is nothing for the jury. *Paul* v. *Crooker*, 8 N. H. 288. If to secure the property from attachment was one object of the conveyance, it was void, although made to secure a just debt. *Crowninshield* v. *Kittridge*, 7 Met. 520.

*H. D. Stone*, for the plaintiff.

METCALF, J. We do not perceive that the defendant has any legal ground of exception to the instructions that were given to the jury. It was not for the court to decide whether the evidence proved that the transactions between the plaintiff and Underwood were fraudulent as against Underwood's creditors. That was a question for the jury, upon a consideration of all the evidence as to the nature of those transactions. Badges and indications of fraud are not conclusive proof of fraud. They may be explained to the satisfaction of a jury. And the judge instructed the jury that the facts relied on by the defendant, unless satisfactorily explained, were evidence of fraud to be considered by them. He also instructed them that if the replevied property was not transferred to the plaintiff by an absolute conveyance, then the transfer was void as against Underwood's creditors, and the defendant was entitled to a verdict. Certainly the defendant should not complain of this last instruction.

The verdict for the plaintiff may have been against the weight of the evidence. If so, the defendant's proper course was to move for a new trial on that ground. The evidence, as stated in the bill of exceptions, certainly tended to sustain the defence set up by the defendant, but it did not warrant the court to instruct the jury that they were bound to find a verdict for him. The burden was upon him to prove fraud, and his counsel cannot maintain the position which they take, that this burden was shifted by proof of badges of fraud. *Powers* v. *Russell*, 13 Pick. 69. Nor can they maintain the position, that retaining possession of property after a sale of it is conclusive evidence of fraud. The law on this point is settled otherwise in this commonwealth *Brooks* v. *Powers*, 15 Mass. 244. *Fletcher* v. *Willard*, 14 Pick. 466

*Exceptions overruled.*